UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-401-H

EVA BUCHANAN                                                                    PLAINTIFF

V.

WESTFIELD INSURANCE COMPANY                                    DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Eva Buchanan seeks underinsured motorist ("UIM") benefits from her own

insurer Westfield Insurance Company ("Westfield") arising from injuries sustained in a car

accident with Emogene Kidd.  Buchanan also asserts claims for violation of Kentucky's Unfair

Claims Settlement Act and common law fraud.  Prior to filing suit, Buchanan had settled her

claim against Kidd.  Westfield now moves for summary judgment, arguing that Buchanan's

broad release in the settlement agreement with Kidd covers her claims against Westfield as well.

The issue presented here is whether the broad release Buchanan executed during

settlement with the tortfeasor also discharges the underinsured motorist coverage and bad faith

claims against her own insurance company.  The answer turns upon the meaning and scope of

the recent Kentucky Supreme Court decision in *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d

699 (Ky. 2006).  The Court must conclude that *Abney* requires dismissal of Buchanan's claims.

I.

The basic facts of the accident are relatively straightforward.  On October 10, 2004,

Buchanan was traveling on Kentucky Highway 70 in Barren County, Kentucky, when a vehicle

driven by Emogene Kidd entered the highway from a stop sign at a "T" intersection.  The two vehicles collided, and Buchanan sustained injuries.

On June 7, 2005, Kidd's insurer, Kentucky Farm Bureau Insurance Company ("KFB") offered to settle Buchanan's claims against Kidd for the full amount of its coverage.  Before agreeing to the settlement, Buchanan contacted her underinsured motorist insurer, Westfield, which communicated its permission for Buchanan to execute the settlement release.  Buchanan then signed a one-page release entitled "RELEASE OF ALL CLAIMS" which discharged "both Emogene Kidd and KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY or THE FB INSURANCE COMPANY" as well as "their heirs, executors, administrators, agents and assigns . . ."  The release also released:

> . . . all other persons, firms or corporations liable, or who might be claimed to be liable, of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, or suits at law or in equity, of whatsoever kind or nature, arising out of any and all known and unknown injuries and damages resulting or to result from an accident that occurred on or about the 10th day of October of 2004 at or near Halfway – Coral Hill Rd. & Hwy. 70 in Barren County.

The release further provided:

> I/we hereby declare and represent that the injuries sustained and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent, and duration of said injuries, and that I/we have not been influenced to any extent whatsoever in making this release by any representations or statement regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing them, or by any physician or surgeon employed by them.

> Furthermore, I/we do hereby agree that in consideration of all aforesaid payments [$50,000] to further indemnify and forever hold

harmless all persons released by this agreement, their successors, employees, agents, or principals for loss from any and all claims that may hereafter be made seeking compensation for the events described herein, specifically agreeing that I/we will pay any and all court costs, attorney's fees, and any other legal expenses in connection with the processing of such claims against all released parties.

It is mutually understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of those herein released, or who might be claimed to be liable, by whom liability is expressly denied.

This release contains the ENTIRE AGREEMENT between the parties hereto, and all prior representations are hereby merged into this agreement.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our free act.

And just before the signature line, the release emphasized: "CAUTION! THIS IS A RELEASE AND YOU ARE MAKING A FINAL SETTLEMENT. READ CAREFULLY BEFORE SIGNING."

After Buchanan executed this release, she sued Westfield on its underinsured motorist coverage for violation of the Unfair Claims Settlement Practices Act, and for common law bad faith. Westfield filed a motion for summary judgment on the basis of the previous release.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, the evidence before the Court must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).

3

II.

Sitting in diversity, this Court must apply Kentucky law.  If that law is not otherwise clear, the Court must predict how the state's highest court would rule.  *Grego v. Meijer, Inc.*, 187 F.Supp.2d 689, 691 (W.D. Ky. 2001) (citing *Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir. 1999)).  The Kentucky Supreme Court recently analyzed a release agreement nearly identical to the one that Buchanan has signed.[1]  *See Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d at 702.  In *Abney*, the court held that a plaintiff's release executed during settlement with one tortfeasor effectively discharged both his negligence claim against a joint tortfeasor and his bad faith claim against the joint tortfeasor's insurer.  *Id.*  This result was despite KRS 411.182(4) (2006), which prevents a release of claims against one party from applying to any other persons liable upon the same claim "unless it so provides".[2]  *Id.*  The court found that the broad language of the release satisfied the "unless it so provides" requirement of the statute, and thus plaintiff was precluded from suing the joint tortfeasor or his insurer.  *Id.*

Here, Buchanan presents evidence that the parties to the release did not intend to release claims against Westfield.  That certainly seems true on Buchanan's part and, because these events all occurred prior to the *Abney* decision, Westfield may have had little reason to suspect

---

[1] The release at issue presently and in *Abney* appear to be variations of a standard KFB form release.  *See Abney*, 215 S.W.3d at 703.

[2] As the *Abney* court noted, at common law, the release of one tortfeasor releases all.  215 S.W.3d at 701. KRS 411.182(2) modifies that rule:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

Ky. Rev. Stat. Ann. § 411.182(c) (2007).

the full legal consequence of its own release in these circumstances.  However, "as with

contracts generally, the courts must look to the language of the release to determine the parties'

intentions."  *Abney*, 215 S.W.3d at 703 (citing *Woodruff v. Bourbon Stock Yards Co.*, 149 S.W.

960, 962 (Ky. 1912)).  Absent ambiguity in the language, Kentucky courts do not look beyond

the four corners of the document to determine that intent.  *Id.* (citing *3D Enters. Contracting*

*Corp. v. Louisville and Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005)).

Even if the language was not intended, it was a mistake of law rather than fact that does not

excuse performance.  The *Abney* court specifically addressed the issue of mistake:

> It is evident from the release that the release language at issue was
> intended, yet not appreciated or considered by [the settling parties].
> This, however, is no ground for avoidance of an enforceable contract
> on the defense of mistake.  This is a mistake of law, not fact.

*Abney*, 215 S.W.3d at 704.  In *Abney,* the Kentucky Supreme Court found that where the broad

language of the release is unambiguous; it releases all corporations who might be claimed liable

for any claims arising out of injuries resulting from the accident between Buchanan and Kidd.

215 S.W.3d at 703.  Thus, even though it is highly doubtful that Buchanan intended his release

to apply so broadly, Kentucky requires that this Court apply its plain and unambiguous language

regardless of the circumstances.  That language issues a global release to all persons and all

claims.

Buchanan argues that the release does not apply to her claims against Westfield because

they are contractual UIM claims, rather than tort claims.  True, *Abney* involved tort claims

against a joint tortfeasor.  But that distinction though quite logical, appears not to help her in

these circumstances.  The release that Buchanan signed covers "any and all actions, causes of

action, claims, demands, costs, loss of services, expenses and compensation, or suits at law, or in

equity, of whatsoever kind or nature" arising out of injuries from the accident.  It does not distinguish between tort and contract liability, nor does the *Abney* court give any indication that it would have held differently had it been faced with contractual claims.[3]  215 S.W.3d at 703.

Buchanan also argues for estoppel by acquiescence, which occurs when a party, through silence or acquiescence, induces an expectation in another party that is reasonably relied upon to their detriment.  *See McDonald v. Burke*, 288 S.W.2d 363, 367-68 (Ky. 1956) (quoting 19 Am.Jur. *Estoppel* § 62).  However, estoppel cannot apply here.  Westfield did not participate in the settlement negotiations, nor the drafting of the release.  The fact that Westfield did not object to Buchanan settling her claims against KFB did not induce Buchanan to release her ability to sue Westfield.

III.

The Court is troubled by the consequences that the rule in *Abney* dictates in these circumstances.  Though Buchanan clearly signed away her right to pursue the UIM claim against Westfield, there is little reason to believe that she intended to do so.  KFB, the drafter and intended beneficiary of the release, received nothing for affecting Westfield's release from liability.[4]  Westfield receives a benefit without providing any consideration or even being a party

---

[3] It should be noted that the distinction between tort and contractual claims does make a difference for the application of KRS 411.182.  Buchanan directs the Court's attention to *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797 (Ky. 2005), which stands for the proposition that KRS 411.182 does not cover UIM contractual claims because "by its plain language, KRS 411.182 limits itself to tort actions." *Id.* at 800.  However, that case dealt specifically with the allocation of fault in tort actions under KRS 411.182(a).  The court did not analyze the application of KRS 411.182(c), the subpart dealing with the scope of releases.  If KRS 411.182(c) does not apply to claims based in contract, it is irrelevant in this case.  To the extent that the statute does apply to contractual claims, this Court finds, as did the *Abney* court, that the release at issue satisfies the "unless it so provides" requirement of the statute.

[4] This need not always be true.  In some instances, a party to a release has an interest in the additional release of all other claims which might flow through it.  However, that is not the case with respect to the redress of Buchanan's claims against Westfield.

6

to the agreement.  Likewise, Buchanan gives up rights without any consideration.

Nevertheless, "Kentucky law is quite clear about the interpretation of contracts.  If the contract is unambiguous, you stay within the four corners of the document to determine its meaning."  *Abney*, 215 S.W.3d at 705 (Scott, J., concurring) (citing *3D Enters. Contracting Corp.*, 174 S.W.3d at 448).  *Abney* presents a valid policy choice and a clear cut rule which applies here despite some apparent inequities.  Such a rule has considerable value.  It promotes careful drafting of contracts and provides predictability for parties.[5]  The Court must apply the law established by Kentucky Supreme Court precedent and hold Buchanan to a literal interpretation of her release.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record

---

[5] True, where no legal, equitable or monetary consideration is provided for release of certain non-parties, a less inflexible rule might better comport with the parties' true intentions and prevent inequities.  However, it might prove difficult to craft such a rule.